The first case on our calendar is United States v. Christian Cardenas. Counsel? Good morning, Your Honor. My name is Paul Angeletti. I'm the attorney for Christian Cardenas. The pivotal issue in Mr. Cardenas' guidelines calculation was the application of 2D1.1A2 for distribution of a controlled substance resulting in serious bodily injury. This raised Cardenas' base offense level to 38 with a guidelines range of 210 to 262 months. The base offense level in the plea agreement without 2D1.1A2 was 30 with a guidelines range of 87 to 108 months. Defense counsel was ineffective at sentencing concerning this crucial aspect of the case in two respects. He didn't realize that serious bodily injury was not, as 2D1.1A2 requires, part of the offense of Cardenas' conviction. Second, in his sentencing memorandum, rather than contesting that the drugs distributed by Cardenas caused serious bodily injury, despite an ample basis to do so, he conceded this fact. Counsel, this is Judge Kuhler. Yes, Judge Kuhler. Didn't the defendant himself, in his statement, admit to selling the drugs that caused the bodily injury? And didn't he do that in the form of acceptance of responsibility by saying that it was he himself who called the ambulance? So he used that information as mitigating information, didn't he? But he never admitted that the drugs he sold caused serious bodily injury. In fact, in his plea allocution, all he admitted was the distribution. He did not admit causing serious bodily injury. Did he claim credit for calling the ambulance? He claimed credit for calling the ambulance. The victim referred to in the case as victim one, which is neighbor. But it may very well be that the drugs that the victim took were given to him by Diaz rather than Cardenas. The supply chain here was Cardenas supplied drugs to Diaz. Diaz then gave the drugs to victim one. The drugs that caused the serious bodily injury were given directly by Diaz. I think that there was some, if you look at the colloquy at sentencing, there was some issue in the prosecution's mind as to whether it was actually drugs by Cardenas that caused the injury or whether Diaz may have procured them from some other source. That's why in the plea agreement, the government did not include the 2D1.1A2 enhancement. When the prosecutor is asked by the court as to why she didn't include that in the guidelines calculation in the plea agreement, the prosecutor responded, at the time of the plea, we did not have the defendant's admission that he has made in his sentencing submission. What I take that to mean is in the absence of the admission, there was a question in the government's mind as to whether these drugs that Diaz gave to victim one actually came from Cardenas. There were some issues about the content of the drugs and whether there was fentanyl in the drugs. Unfortunately, those issues never got litigated. Defense counsel made a half-hearted attempt to raise them at sentencing. Excuse me, this is Judge Jacobs. In order to get to first base here, you have to show prejudice. The sentence was 96 months, which seems to be less than half the bottom of the guidelines with the enhancement included. The judge basically didn't seem to be influenced by this one way or the other. She said she would impose the same sentence regardless. What's the harm? What's the prejudice? I think there's prejudice in two respects. First of all, when the sentencing court is reviewing the factors that contribute to the seriousness of the offense, the sentencing court says, and this is at 137 of the appendix, Mr. Cardenas acknowledges that the use of heroin he distributed resulted in serious bodily injury to this individual. Now, nowhere else in the case, not in the plea agreement, he was not required to stipulate in the plea agreement that he caused serious bodily injury, and there's nothing in his plea allocution. But I think that the district court clearly weighed the fact, the serious bodily injury fact that defense counsel conceded against Cardenas. Also, I think it's problematic that when the district court says it would have imposed the same sentence under either the 87 to 100-month guidelines range without the 2D1.1A2 or the 210 to 262 months with the 2D1.2A, I think that, I understand that the court has held that disputes about applicable guidelines ranges need not be resolved where the sentence falls within either of two arguably applicable guidelines range. But I point out a few considerations in this regard. In the cases like Lutchman and Jass, which deal with the district court stating it would have given the same sentence under either of two guidelines ranges, there is not such a wide disparity as there is in the instant case. In Lutchman, the court characterized the disparity between the two alternative ranges as a slight adjustment. Jass involved two potential guidelines ranges separated by only a two-level enhancement. The other problem I have with the district court saying that it would have given the same sentence under either guidelines range is that appears to be at odds and appears to be inconsistent with what this court and the Supreme Court has repeatedly said when analyzing sentences, which is that the guidelines serve as the starting point and initial benchmark. And there seems to me to be an irreconcilable tension between the notion that the district court can properly impose the same sentence no matter which of two guidelines ranges is correct. But isn't it, this is Judge Carney, but if my understanding is right, we had the guidelines range being 210 to 262 with the serious injury enhancement and 87 to 108 without it, which is what was in the plea agreement, and he got 96 months. So tending towards the low end of the range that doesn't have the enhancement. And so like Judge Jacobs, I'm having difficulty considering the 210 to 262 as any benchmark at all. I mean, the district court considered Mr. Cardenas' factors, the support of his family, his difficult circumstances. She went through all the considerations that one might and seemed perplexed, understandably, by the variance in the two ranges. But, you know, this was in line with, you know, he got less than Mr. Diaz got, which is 120 a month. And being at the low end of the range that was applicable without the bodily enhancement, I have difficulty understanding how the error that counsel made, if error was, had really any effect at all. Do you think he would have been sentenced? Do you have a plausible alternative? Okay, I see that I'm about to trespass on the court's time, and if I can just take a moment to respond to your question, Your Honor. You can respond. Thank you very much. I think that the 96-month sentence, and I do appreciate that the district court did weigh the mitigating factors, like the fact that he, in effect, saved victim one's life by calling for help. The district court did weigh that. The problem I have with that is that the one factor that the district court discussed, that the heroin that was distributed by Mr. Cardenas caused bodily injury, was only in the record because of the erroneous concession by defense counsel. And perhaps had defense counsel litigated that issue when there was ample basis to do so, then the sentence might have been less than 96 months. I understand, again, that the district court, and I appreciate that the district court really tried to impose a fair sentence and did weigh those mitigating factors. But I think what may have skewed the calculus based on this record was the aggregating factor that Cardenas' heroin caused the bodily injury. Counsel, you reserve one minute for rebuttal. We'll hear from the government. Yes, Your Honor. Good morning. May it please the court, my name is Jason Richman, and I'm an assistant United States attorney here in the Southern District of New York. I represent the government on appeal, and I represented the government in the proceedings below. The appellant raises three related issues concerning the performance of his counsel. They are without merit, and the judgment should be affirmed. Picking up where the court left off, I'll start with the prejudice analysis as to the argument made in the counsel brief from the appellant. That is dispositive in this case. Judge Nathan made clear at sentencing that her determination on the serious bodily injury question had no effect on her ultimate sentence. Indeed, Judge Nathan explicitly stated she would have imposed the same sentence in 96 months even if she had come to the guideline calculation as what was stipulated to in the plea agreement. Let me interrupt for a minute. Judge Pooler, did you have a question? No, I was about to ask, but I'll follow you, Susan. Go ahead. Well, thank you. So my question is, how could it – I appreciate that Judge Nathan was careful and that she made the statement that she would have imposed the sentence in any event. You know, we've all read about the anchoring effect. We've all read about kind of, you know, even in negotiation, making a first offer, naming a number kind of sets the – frames the future conversation. She was presented still with a range of 210 to 262, as well as a concession and apology for causing severe injury to the neighbor for whom Mr. Cardenas had affection and, you know, he had taken extraordinary steps to save this person's life. It seemed unclear whether it was drugs provided by Mr. Cardenas or anyone else that had caused the crisis, the health crisis. And I'm not sure that we can be so confident, as you suggest, in concluding that the judge was unaffected in the end in setting 96 months when she thought that there had been a concession. In fact, there had been a concession to this effect. How can you really dispel that concern? Thank you, Your Honor. We can dispel that concern from Judge Nathan's own statement in which she said if she had come to a different guideline calculation, the one that was contained in the plea agreement, she would have imposed the same sentence. I think we can clearly read into Judge Nathan's statement that she was cognizant of a conversation like this one potentially happening and wanted to dispel the concern that Your Honor has just elaborated by being as clear as she could have been. In addition, Your Honor, in the 3553 analysis, Judge Nathan pointed both to the overdose and the defendant's role and also to the defendant taking responsibility for it, trying to help the victim when he became ill, and the defendant's own relationship with the victim. So as was alluded to during the course of the appellant's argument, those 3553A factors which rotated in favor of the appellant certainly would not have carried the same weight had the appellant not admitted to his role in this conduct. My question sort of follows on from that. What should we make in the usual case of a sentencing judge saying, well, all of these arguments aside, no matter what, this is the sentence I would have imposed? Because it very much puts us out of business as a reviewing court. Understood, Your Honor. In this case, I think Judge Nathan, it was a close call. I think there was some back and forth with the government about why the range in the plea agreement had been agreed to by the parties. And while in every case it might not be a situation in which the court can just protect its sentence by making a statement like the one that was made here, in this case, given the back and forth and given that it was a close call, it does compel the result that Judge Nathan thought this through and determined that in either of these two guidelines ranges, the sentence that she came to would have been appropriate. She did, the judge did say at one point also, though, that she gathered that the individual had died. Did I understand right? And then it was, she was informed that it was from totally unrelated causes. But still, this clearly was on her mind. She sentenced an autopsy report and so on. Yeah, correct, Your Honor. I think that that came from some sort of just vocabulary that was clarified during the course of the argument, which was there was both a medical report and a subsequent autopsy report, and at some point counsel referred to the autopsy report when it should have been the medical records that were referred to. But this victim did eventually die from a subsequent overdose that came at a later date. I see. Thank you. Of course, Your Honor. And I would also point out, Judge, on page 119 of the appendix, there's a number of facts that Judge Nathan lists that were undisputed and from the PSR that did drive her determination, and that one is not one that is listed. She did still say that her starting point at the guideline range was 210 to 262, correct? Absolutely, Your Honor. Yes. Yeah. And we do believe that's why she was so careful in the end to come back around to what drove her ultimate determination. And moving ahead, Your Honor, turning to the first prong of the Strickland analysis. Again, counsel's performance here did not fall below what is an objective standard of reasonableness. We can see through the record that counsel did go back and forth during the course of the sentencing, ultimately consulting with his client and coming to a determination. And that determination allowed counsel to take responsibility and allowed his client to take responsibility for what had happened, allowed his client to say how badly he felt about what had happened to the victim, allowed his client to, and he to talk about the genuine remorse he felt and the steps he took to save the victim. And all of these facts were facts that were contained in the pre-sentence report, facts that were born from recorded calls and other evidence that was provided and developed by the government, and all facts that were not disputed even before sentencing submissions and, quite frankly, could not have been disputed because of the nature of the evidence. Had the appellant continued to deny his role in the overdose, he would have still been faced with these undisputed facts and would not have been able to take credit for the steps he himself took in connection with the overdose and take credit for the remorse he felt and the impact the overdose had on him. And that also bleeds into the prejudice argument again, which is that Judge Nathan pointed out that there were ample uncontested facts in the record from which she could have concluded that the appellant was responsible for the overdose. She sort of gave the government a hard time about why it had not insisted upon that guideline calculation in the plea agreement, which speaks to the fact that in Judge Nathan's mind, there were sufficient facts absent the admission from counsel to conclude that the overdose was the result of the defendant's behavior. Given that, there can be no prejudice and counsel's performance did not fall below an objective standard of reasonableness. Thank you, Your Honor. Mr. Angelotti, you have reserved one minute for rebuttal. Yes. The first thing I just want to make clear, my understanding of the record in all fairness is that although defense counsel referred to the medical records as an autopsy report, by the time the court imposed sentence, it was quite clear on the fact that victim one had died from causes unrelated to the case.  I do think that it is troubling that, and again, I have tremendous respect for the amount of effort and the amount of thought that Judge Nathan put into the sentence. I think she strove mightily to be fair, but I think it is problematic when you have a court saying, I would have imposed the sentence under either of the guidelines ranges, because then what the court is doing, in effect, is going straight to the 3553A factors. And the mode of analysis in our procedural reasonableness cases is the first step is to go to the guidelines range and determine the correct guidelines range. The next step, after you have determined the guidelines range, that gives the context for the 3553A factors. And in this case, the context of the guidelines range that Cardenas was sentenced on was determined by Judge Nathan to be the 200-month guidelines range with the 2D1.1A2 factor applied. And that's all I have. Thank you, counsel. Thank you both. We reserve the session.